OPINION
Defendant-appellant, Charles R. Joyce, appeals from his conviction on one count of making false alarms, a violation of Columbus City Code 2317.32. In convicting appellant, the jury found beyond a reasonable doubt that appellant "reported to a law enforcement agency an alleged offense in progress, to wit: A person carrying a concealed firearm, knowing such offense was not occurring." For the reasons that follow, we affirm.
The following evidence was presented at the jury trial. On the evening of June 24, 1999, appellant, a narcotics detective with the Columbus Division of Police, was attending a retirement party for a fellow officer at Barrister Hall in Columbus. The party was attended by numerous local, state and federal law enforcement agents and prosecutors. From their vantage point on the second floor of Barrister Hall, appellant and others at the party had a view of High Street below.
Appellant testified that he arrived at the party at approximately 5:00 p.m., and had just begun to drink his second beer when someone asked him whether he knew the man who was sitting in a car across the street. Appellant looked out the window but did not recognize the man, later identified as Joseph Dials.
Appellant testified that Dials was parked in a gold Cadillac in a no-parking zone directly across the street from the door to Barrister Hall and that Dials was "watching everybody that walked into that doorway." Appellant testified that he observed Dials periodically for twenty to forty minutes and that, as time lapsed, appellant grew increasingly suspicious of Dials. According to appellant, Dials began watching the second floor window where the officers stood. Appellant testified that Dials made an "obscene gesture" toward the window. Appellant stated that, after Dials made the gesture, he got out of his car. Appellant testified as follows:
 A. * * * [Mr. Dials] exits the car opens up the door, shuts the door, and he makes this move right here (indicating) with his pants, pulls it up, and then stands directly in front of his car on the hood, staring up at me in the window.
Q. Now, stop right there.
A. Yes.
 Q. When you see Based upon your training and your experience, when you see somebody pitch their pants in that manner, you tell the jury what that tells you as a trained officer.
 A. Mr. Meeks, I've been carrying for a lot of reasons I've had to carry a gun because I'm a police officer for the last twelve and a half years, and there is a difference between pulling up your pants by the front, you know, you're hiking up your pants, or you carry a gun. I've carried a gun there for years. And that was to me, was an indication that there was a possibility Mr. Dials was carrying a firearm.
Appellant testified that, immediately after Dials exited the car and hitched up his pants, Dials "ma[de] an asserted gesture, pointed at me, looks at me, points up like that, (indicating) like he's got a gun." Appellant testified that, as a result of Dials' behavior, appellant believed "that this man possibly was armed with a firearm." Appellant testified that he became concerned for the safety of the attendees at the party.
Appellant borrowed another police officer's cellular telephone, informing the officer that appellant intended to "call a cruiser to check this guy out." Appellant authenticated the following transcription of his telephone call to the non-emergency police number:
Dispatcher (D): Columbus Police
 Caller (C): Yeah, um my name's Reggie and there's a guy with a gun down here across from Barrister Hall.
D: Across from where?
C: Uh, he's at the High Beck, at High and Beck Streets.
D: High and what?
 C: Beck, I think he has a gun, he's sitting in a gold Cadillac.
D: Is he white or black?
 C: He's a male white, he's got an orange baseball cap on. I'm not sure but he's he's [sic] a pretty scary guy could you send a cruiser down?
D: Sir, is he white or black do you know?
 C: He's male, he's a white guy. He's got a white T-shirt on.
 D: What's he across from? What's the name of the place you're at?
C: At uh, it's at High and Beck Street.
D: Beck?
C: Yeah, Beck.
 D: Ok, what, what's the name of the restaurant or business your [sic] at now?
 C: Tony's Tony's Italian Restaurant He's parked right on High Street.
D: I know that, and he's sitting in a gold car?
C: Yeah, it's a gold Cadillac.
D: Do you have a license plate number at all?
 C: No, I can't see it But he keeps I think he's a drug dealer, I'm not sure.
D: What's your name?
 C: My name is Reggie, I don't want to be known This guy scares me.
D: Ok, we'll have someone check it out.
C: Thank you, Bye.
Appellant explained that he identified himself as "Reggie" to the police dispatcher because he "did not want the radio room to know that there were all these undercover officers there."
In response to appellant's call, Sergeant Joan Schlabach of the Columbus Division of Police was dispatched to investigate a report of a man with a gun. She arrived at the scene forty seconds later and saw Joseph Dials standing next to the driver's door of a gold Cadillac. Sergeant Schlabach ordered Dials to take his hands out of his pockets and walk to the back of the car. She testified that Dials was confused but cooperative. She searched Dials, determined that he was unarmed, and placed him in the back of her cruiser. Other officers arrived and searched Dials' car. They found no weapon.
According to Sergeant Schlabach, Dials insisted that somebody was playing a joke on him. Dials told her that he had been waiting in the Cadillac for someone to arrive with a different vehicle to exchange in trade when somebody in the upstairs window of Barrister Hall "flipp[ed] him off." Dials told Sergeant Schlabach that he saw the person in the window talk on a cell phone approximately one minute before Schlabach arrived at the scene. Schlabach testified that she looked up and saw four or five men at the window "paying attention to us, looking at us, pointing and laughing at different times."
Sergeant Schlabach testified that she went upstairs to Barrister Hall to find out if anybody would acknowledge making the phone call. Schlabach learned about the retirement party and she recognized some of the people in the room. None of the people she knew had any information about the phone call to the police, and she was not able to find the person Dials had described. Sergeant Schlabach went back downstairs, told Dials that she was unable to find the person he described and suggested that Dials should leave. She testified that Dials later went to police headquarters and filed a complaint.
Other witnesses testified that they also observed Dials from the Barrister Hall window. Agent Dan Ozbolt of the Bureau of Alcohol, Tobacco and Firearms ("ATF") testified that Dials was observing everyone arriving at and exiting the party, and he described Dials' behavior as "extremely suspicious." Agent Ozbolt testified that he believed "it definitely should have been checked out." Agent Ozbolt stated that it was possible Dials may have been armed. Ozbolt did not, however, see a gun, nor did he see Dials make any gestures toward the window.
Columbus Police Officer James Day also looked out the window at Dials. Although he noted that Dials was parked in a no-stopping zone, Officer Day did not believe that Dials was acting suspiciously. He testified that he spoke with Sergeant Schlabach in Barrister Hall when she tried to determine who placed the phone call. Day stated that, after Sergeant Schlabach left Barrister Hall, appellant approached Day in an effort to learn what Schlabach had said. Day recalled that he remarked to appellant, "[t]ell me that that didn't happen." According to Day, appellant responded that those types of calls are placed every day.
Joseph Dials testified that, on the evening at issue, he was in his office when he received a telephone call from a salesperson at a car dealership. Dials stated that he had recently purchased a new Chevrolet Tahoe and that the dealership had given him the gold Cadillac to drive as a loaner vehicle until the Tahoe was ready for delivery. Dials testified that he arranged to meet the salesperson on the street at the corner of High and Beck Streets, a location with which the salesperson was familiar. Dials then parked in the appointed location to wait for his Tahoe to arrive.
Dials testified that, while he was waiting, he looked up at the second floor of Barrister Hall and noticed three men watching him. According to Dials, one of the men, whom he later identified as appellant, "proceeded to give me the finger, flip me off with the middle finger." Dials testified that he did not recognize the men, and he looked around his car to see whether someone else was the intended object of the men's attention. Dials stated that he tried to ignore the men but, when he looked up again, appellant was still gesturing and the other men were laughing. Dials denied that he made any gestures in return.
Dials testified that he tried to ignore the behavior but, when he looked again, appellant was pointing and cursing. Dials decided to get out of his car and "let him see me, you know, plus, I wanted to look around my car and see if there was someone else around my car he was doing this to." Dials testified that, after he looked around his car, he sat on the hood. He stated that he looked back up and saw that appellant was calling someone on a telephone while a group of men gathered around and laughed. Dials testified that he assumed appellant was calling him, so Dials checked his cellular phone. Shortly after that, the police arrived, searched Dials and placed him in the cruiser. Dials testified that the police pointed guns at him as they ordered him to put his hands up. Dials testified that he was parked outside Barrister Hall for no longer than ten minutes before the police arrived.
Dials testified that, while Sergeant Schlabach was upstairs trying to determine who made the call to the police, Dials had a brief conversation with Richard Hess, the manager of Barrister Hall. Dials testified that he tried to assure Hess that he had done nothing wrong, but Sergeant Schlabach asked Dials to leave the area. Dials testified that the car dealership salesperson arrived and he and Dials exchanged vehicles. Officer Day confirmed that he observed Dials exchange vehicles with another man, leaving Dials with a sports utility vehicle. At Sergeant Schlabach's suggestion, Dials left the scene. Dials returned shortly thereafter, however, in an effort to find the person who placed the call to the police. Dials was discouraged by a police officer, however, from entering Barrister Hall. Instead, Dials went to police headquarters to file a complaint. After Dials filed the complaint, he and Sergeant Schlabach returned to Barrister Hall to search again, unsuccessfully, for the man Dials saw on the cellular phone.
Dials testified that he had never met appellant before this incident. Dials stated that he did not know that there was a party for a retiring police officer at Barrister Hall on the date at issue.
On cross-examination, counsel for appellant questioned Dials regarding his involvement with drugs, including involvement with a specific drug deal in 1997 and an ongoing narcotics investigation. Although Dials admitted that the Internal Revenue Service ("IRS") had obtained a warrant to search his home and business a few years ago, he denied that he knew that the investigation was still ongoing. He also denied that he knew on the date of the incident at issue that he was the target of federal and state narcotics investigations. Although Dials admitted that he was acquainted with several individuals who were involved in the marijuana and cocaine trafficking, he denied that he was in any way involved in illegal drug trafficking. He also denied that he was involved in a plot to commit arson for hire.
Richard Hess, the Barrister Hall manager, testified that Dials told him on the evening of the incident that Dials and someone in the window had been giving each other dirty looks and exchanging gestures and that Dials "had pointed kind of like he had a gun in his hand." Hess further testified that Dials later telephoned him and told him that, should the matter ever go to court, Hess should say that Dials was minding his own business when the police arrived. Hess further testified that he had not observed the exchange between Dials and the men in the Barrister Hall window.
On appeal, appellant assigns the following errors:
 I. The trial court erred in prohibiting Appellant from offering evidence of a key witness' perjured testimony and other criminal activities, thereby violating well-established rules of evidence and Appellant's rights of confrontation and to present a complete defense, as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and comparable provisions of the Ohio Constitution.
 II. The special prosecutor committed misconduct by failing to correct perjured testimony of her key witness, thereby depriving Appellant of his right to a fair trial as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and comparable provisions of the Ohio Constitution.
 III. The trial court erred and thereby deprived Appellant of due process of law as guaranteed by the Fourteenth Amendment to the United States Constitution and comparable provisions of the Ohio Constitution by overruling Appellant's Crim. R. 29 motion for judgment of acquittal, as the prosecution failed to offer sufficient evidence to prove beyond a reasonable doubt each and every element of making false alarms.
 IV. The trial court erred and thereby deprived Appellant of due process of law as guaranteed by the Fourteenth Amendment to the United States Constitution and comparable provisions of the Ohio Constitution by finding Appellant guilty, as the verdict for the charge of making false alarms was against the manifest weight of the evidence.
 V. The trial court erred in granting the federal government's motion to quash Appellant's subpoenas, as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and comparable provisions of the Ohio Constitution.
 VI. The trial court erred when it failed to give Appellant's proposed jury instructions one through five, as guaranteed by the Fourteenth Amendment to the United States Constitution and comparable provisions of the Ohio Constitution.
By his first assignment of error, appellant argues that the trial court erroneously precluded appellant from offering extrinsic evidence that Dials was involved in drug trafficking. Appellant argues that the trial court's ruling prevented appellant from establishing that Dials committed perjury and that Dials' motive for being outside Barrister Hall during the retirement party was to identify undercover narcotics agents. Appellant argues that, in excluding this evidence, the trial court ran afoul of the rules of evidence and denied appellant's federal constitutional rights to confront witnesses and to prevent a complete and meaningful defense.
The admission of evidence is generally left to the sound discretion of the trial court and is reviewed for abuse of discretion. State v. Awkal (1996), 76 Ohio St.3d 324, 332. Abuse of discretion is more than an error of judgment; it is an error that is arbitrary, unconscionable or unreasonable. State v. Adams (1980), 62 Ohio St.2d 151, 157. If a trial court has curtailed cross-examination from which a jury could have assessed a witness' bias, prejudice or motive to testify, however, a reviewing court must make two additional inquiries designed to ensure a defendant's constitutional rights to a fair trial. "First, a reviewing court must assess whether the jury had enough information, despite the limits placed on otherwise permitted cross-examination, to assess the defense theory of bias or improper motive." Boggs v. Collins (C.A.6, 2000), 226 F.3d 728, 739. "Second, if this is not the case, and there is indeed a denial or significant diminution of cross-examination that implicates the Confrontation Clause, the Court applies a balancing test, weighing the violation against the competing interests at stake." Id. We conclude that the trial court did not abuse its discretion when it excluded extrinsic evidence of drug trafficking and other illegal activities. We further conclude that exclusion of the evidence at issue did not violate appellant's federal constitutional rights.
Prior to cross-examination of Dials, the trial court ruled that appellant's counsel were permitted to question Dials about his involvement in drug trafficking and other illegal activities, but that they were required to accept his answers and could not use extrinsic evidence to refute Dials' testimony. When questioned by appellant's counsel, Dials denied that he is a drug trafficker and he denied that he committed arson for hire. Appellant's counsel then proffered that, had they been permitted, they would have called witnesses who would have testified that Dials was involved in these illegal activities.
Appellant now argues that extrinsic evidence of Dials' illegal activities should have been admitted under Evid.R. 404(B). Evid.R 404(B) provides the following:
Other crimes, wrongs or acts
 Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
Appellant agues that evidence indicating that Dials was the subject of a drug investigation was admissible pursuant to Evid.R. 404(B) because it demonstrated that Dials' motive for watching the party was to identify undercover narcotics officers. Appellant argues, "[t]hus, as Dials was a narcotics trafficker under investigation by undercover agents, it is more probable than not that he was acting suspiciously in a manner that warranted Appellant's call to the police department." (Emphasis added.) Dials' motive, appellant argues, bolsters appellant's claim that Dials was acting in a suspicious manner.
Even were we to conclude that evidence of a narcotics investigation was instructive on the issue of whether Dials was acting suspiciously, we believe that this evidence was not relevant to the central issue in this case: whether appellant knowingly called in a concealed weapon false alarm. Appellant did not telephone the police to report a suspicious person; he stated to the police dispatcher that he believed that Dials had or might have had a gun. We further note that there is no evidence whatsoever that appellant had any knowledge of a narcotics investigation involving Dials at the time he made the call at issue. Even if it were instructive of Dials' motive, evidence of drug trafficking activity uncovered after appellant made the call at issue is not relevant to the issue of whether appellant knowingly called in a false alarm when he called to report that Dials had or may have had a gun. We conclude that evidence of the narcotics investigation would be improper other acts evidence designed to persuade the jury that Dials was a drug dealer and, therefore, more likely to be carrying a gun. We conclude that Evid.R. 404(B) is expressly designed to prohibit such other acts evidence.
Appellant further argues that extrinsic evidence indicating that Dials was the subject of a drug investigation was admissible pursuant to Evid.R. 404(B) because it demonstrated that Dials lied under oath when he testified that he was not involved in illegal drug trafficking. According to appellant, the evidence is, therefore, admissible to impeach Dials' testimony that he was parked on the street for a lawful purpose and that he had never been involved in drug trafficking. We disagree.
We conclude that exclusion of extrinsic evidence regarding Dials' prior involvement in illegal activities was mandated by Evid.R. 403, which provides as follows:
(A) Exclusion mandatory
 Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury.
Evidence offered to impeach Dials' testimony regarding his criminal background was, at best, of limited relevance. Appellant admitted that he was unaware of Dials' background on the date at issue. Appellant also admitted that he had never encountered Dials prior to the incident at Barrister Hall. There was no evidence to suggest that anyone at the party recognized Dials. The veracity of Dials' testimony regarding his involvement in drug trafficking, therefore, is of marginal relevance as to whether appellant knowingly made a false report of a concealed weapon. In contrast, the risk of unfair prejudice was substantial, as the evidence at issue might have biased the jury against Dials for reasons that are not relevant to whether appellant knowingly called in a false alarm. Exclusion of extrinsic evidence regarding Dials' involvement in illegal activities was thereby mandated by Evid.R. 403(A).
Nor was the evidence admissible to prove that Dials has a general propensity for untruthfulness. Evid.R. 608 states, in relevant part, as follows:
(B) Specific instances of conduct
 Specific instances of the conduct of a witness for the purpose of attacking or supporting the witness's character for truthfulness, other than conviction of crime as provided in Evid.R. 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the trial court, if clearly probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness's character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.
By its express terms, Evid.R. 608(B) prohibits the use of extrinsic evidence, such as the evidence proffered by appellant, for purposes of establishing or attacking a general trait for truthfulness.
For the foregoing reasons, we conclude that the trial court did not abuse its discretion when it excluded extrinsic evidence of Dials' alleged illegal activities. We further conclude that the trial court did not violate appellant's federal constitutional rights to confront witnesses and to present a complete and meaningful defense. Far from limiting cross-examination, the trial court granted wide latitude to defense counsel to ask Dials about his background. Moreover, we conclude that the jury had adequate information by which to assess the defense theory regarding Dials' allegedly suspicious motive for parking outside Barrister Hall. Although Dials denied that he was a drug trafficker, he admitted that he played a peripheral role in a 1997 drug transaction and that he had been under investigation by the IRS. Defense counsel also cross-examined Dials extensively regarding inconsistencies in his explanation for the reason he was outside Barrister Hall. Appellant and ATF Agent Ozbolt both testified that Dials was behaving suspiciously, and they both stated that they believed that Dials was watching law enforcement officers enter and exit the building. Accordingly, appellant's first assignment of error is overruled.
In his second assignment of error, appellant contends that the special prosecutor committed misconduct by failing to correct Dials' perjured testimony. Appellant also contends that the trial court erroneously refused to order the prosecutor to take remedial action to correct perjured testimony, thereby depriving appellant of his right to a fair trial.
"The knowing use of false or perjured testimony constitutes a denial of due process if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." United States v. Lochmondy (C.A.6, 1989), 890 F.2d 817, 822. "The same result obtains when the State, although not soliciting false evidence, allows it to go uncorrected when it appears." Napue v. Illinois (1959), 360 U.S. 264,269. In order to meet the test for prosecutorial misconduct under these circumstances, the defendant must show that: (1) the statement was false; (2) the statement was material; and (3) the prosecutor knew it was false. United States v. O'Dell (C.A.6, 1986), 805 F.2d 637, 641. The burden is on the defendant to show that the testimony was perjured. United States v. Griley (C.A.4, 1987), 814 F.2d 967, 971. Even when a prosecutor engages in misconduct, however, the reviewing court should not reverse the conviction if the error produced is harmless. See United States v. Young (1985), 470 U.S. 1, 13, n. 13.
Appellant contends that Dials gave perjured testimony on three occasions: (1) when he said that he was outside Barrister Hall on the night at issue in order to swap vehicles with an employee from a car dealership; (2) when he said that he was unaware of an ongoing narcotics investigation; and (3) when he said he was not involved in a specific drug transaction that occurred in 1997. Appellant argues that the prosecutor committed misconduct by tolerating this testimony. We conclude that appellant failed to establish prosecutorial misconduct. First, we conclude that appellant has not established that many of Dials' alleged perjured statements were false. Second, we conclude that, even where appellant has demonstrated that Dials may have provided false testimony, appellant has not established that the testimony at issue was material to the case.
Appellant has not demonstrated that all of the alleged perjured testimony was false. With regard to the ongoing investigation, appellant argues that Dials was aware of the investigation because his home had been searched pursuant to an IRS warrant and an agent from ATF was involved in executing the search warrant. We do not believe that this evidence satisfies appellant's burden of proving that Dials knew that he was the subject of an ongoing narcotics investigation. Indeed, Dials admitted on cross-examination that he had been the target of an IRS search warrant in the past.
Nor are we persuaded that appellant has satisfied his burden of proving that Dials lied when he stated that he was outside Barrister Hall in order to swap the gold Cadillac for a new Chevrolet Tahoe. Officer Day testified that he observed that a man arrived in a sports utility vehicle, which he exchanged for the Cadillac, corroborating Dials' testimony that he was waiting to trade vehicles. Appellant did not offer any contradictory evidence from the Chevrolet dealership. Even if we assume that appellant has a history of drug trafficking and that appellant knew that he was the subject of an ongoing criminal investigation, we do not agree that such evidence demonstrates that Dials was lying about the reason he was outside Barrister Hall on the date in question.
We conclude, however, that Dials was, at the very least, less than forthcoming about his involvement in a specific drug transaction in 1997. Although Dials admitted that he was present during the transaction, he claims he was an innocent bystander. Based on the proffer by appellant, Dials may have lied in response to specific questions about his involvement in the drug transaction. Furthermore, we note that appellee "concede[s] that [a]ppellant has offered evidence sufficient to suggest that Dials may have lied about his involvement in" a drug deal in 1997.
We express no opinion about whether Dials may be subject to a charge of perjury. We conclude, however, that the alleged false statements about the 1997 drug transaction were not material to the issues in this case. Appellant contends that Dials' alleged false statements were material because Dials' criminal activities were the real reason that Dials was parked outside Barrister Hall. Whether Dials was involved in a drug incident in 1997, however, is, at most, of marginal relevance as to why Dials was outside Barrister Hall two years later. Moreover, it is undisputed that appellant had no knowledge whatsoever of Dials or of the 1997 drug transaction when appellant observed Dials from the Barrister Hall window, and there is no evidence that anyone at the party recognized Dials. Accordingly, the 1997 transaction could not have been relevant to whether appellant knowingly made a false report that Dials was carrying a concealed weapon. Because the alleged false statements were not material to this case, appellant has failed to demonstrate prosecutorial misconduct. Accordingly, we overrule appellant's second assignment of error.
By his third assignment of error, appellant argues that the trial court erred by overruling appellant's Crim.R. 29 motion for judgment of acquittal. Appellant contends that he was entitled to acquittal because the state failed to provide sufficient evidence to prove his guilt. Specifically, appellant argues that the city failed to prove that appellant reported that Dials was carrying a concealed firearm, as alleged in the criminal complaint.
Pursuant to Crim.R. 29(A), "[t]he court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the * * * complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses." The Ohio Supreme Court outlined the role of an appellate court presented with a sufficiency of evidence argument in State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus:
 An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of a crime proven beyond a reasonable doubt. * * *
See, also, Jackson v. Virginia (1979), 443 U.S. 307, 319. This test raises a question of law and does not allow the court to weigh the evidence. State v. Martin (1983), 20 Ohio App.3d 172, 175. Rather, the sufficiency of evidence test "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Jackson, at 319. Accordingly, the weight given to the evidence and the credibility of witnesses are issues primarily for the trier of fact. State v. Thomas (1982), 70 Ohio St.2d 79, 80. We employ the same standard of review for an argument for acquittal under Crim.R. 29. See State v. Bezak (Feb. 18, 1998), Summit App. No. 18533, unreported (there is "no difference between the standard of review for a challenge to the sufficiency of the evidence and that for a motion for acquittal under Crim.R. 29[A]).
We conclude that there was sufficient evidence by which a jury could conclude that appellant reported that Dials committed the alleged offense of carrying a concealed weapon. Appellant admitted that he reported "there's a guy with a gun," and "I think he has a gun." Appellant also admitted that he never actually saw a gun. Viewed in the light most favorable to the prosecution, we believe that this evidence could lead a rational trier of fact to conclude that appellant was reporting a concealed weapon. Accordingly, we overrule appellant's third assignment of error.
By his fourth assignment of error, appellant contends that his conviction was against the manifest weight of the evidence. Appellant argues that his conviction would amount to a miscarriage of justice because (1) the city failed to prove that appellant stated that Dials had a concealed weapon, and (2) the city failed to prove that appellant knew that the information he provided to the police was false.
In determining whether a verdict is against the manifest weight of the evidence, the appellate court acts as a "thirteenth juror." Under this standard of review, the appellate court weighs the evidence in order to determine whether the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Thompkins (1997),78 Ohio St.3d 380, 387. The appellate court, however, must bear in mind the trier of fact's superior, first-hand perspective in judging the demeanor and credibility of witnesses. See State v. DeHass (1967),10 Ohio St.2d 230, paragraph one of the syllabus. The power to reverse on "manifest weight" grounds should only be used in exceptional circumstances, when "the evidence weighs heavily against the conviction." Thompkins, at 387.
Appellant's conviction is not against the manifest weight of the evidence. As we have already noted, appellant's statements to the police dispatcher, coupled with his admission that he never saw a gun, adequately establish that appellant in fact reported a concealed weapon.
We are also persuaded that the city provided ample evidence that appellant knowingly called in a false concealed gun alarm. The court instructed the jury as follows with regard to the knowledge element:
 * * * A person acts knowingly, regardless of their purpose, when they are aware that their conduct will probably cause a certain result or that their conduct will be of a certain nature. A person has knowledge of circumstances when he's aware that such circumstances probably exist. Knowingly means that a person is aware of the existence of the fact and that his acts would probably cause a certain result or be of a certain nature.
 Since you cannot look into the mind of another, knowledge is determined from all the facts and circumstances in evidence. You will determine from these facts and circumstances whether there existed, at the time, in the mind of the defendant, Mr. Joyce, an awareness of the probability that the alleged offense was not occurring. [Tr. 346-347.]
The city's evidence of appellant's knowledge included testimony that appellant and others at the Barrister Hall party were laughing before appellant called the police and after the police arrived, that appellant used a false name when calling the police, and that appellant was unavailable to discuss the incident with Sergeant Schlabach when she attempted to question people at Barrister Hall. In light of this evidence, along with Dials' denial that he made any obscene or threatening gestures, we will not conclude that the jury clearly lost its way when it convicted appellant. We therefore overrule appellant's fourth assignment of error.
In his fifth assignment of error, appellant argues that the trial court erred in granting the federal government's motion to quash appellant's subpoenas. By way of subpoenas, appellant had sought testimony and documentation regarding federal investigation into Dials' involvement in criminal activities. Appellant contends that the court failed to follow the constitutionally mandated procedure to determine whether appellant was entitled to the information sought in the subpoenas. Appellant argues that the trial court erroneously failed to apply the test articulated in Pennsylvania v. Ritchie (1987), 480 U.S. 39, and Roviaro v. United States (1957), 353 U.S. 53.
In Pennsylvania, the Supreme Court noted that, pursuant to the federal constitution's guaranteed rights of confrontation and due process, "the government has the obligation to turn over evidence in its possession that is both favorable to the accused and material to guilt or punishment." Id. at 57. "[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Id. "A `reasonable probability' is a probability sufficient to undermine confidence in the outcome." Id. However, "[a] defendant's right to discover exculpatory evidence does not include the unsupervised authority to search" government files. Id. at 59. Under certain circumstances, the government may have a claim of privilege to protect the information sought by a defendant's subpoena. Roviaro, at 62.
The Supreme Court has established a two-part analysis in order to protect a defendant's constitutional rights while preserving the government's interest in confidentiality. First, if the defendant makes a plausible showing that material and favorable information exists, the trial court must conduct an in camera inspection of the information sought to determine whether it can be disclosed without compromising a government privilege. Ritchie, at 59-60. Second, if it concludes that the requested information is material and favorable, the trial court must engage in a balancing test to determine whether any claimed privilege outweighs the defendant's constitutionally protected interest in gaining access to the information. Roviaro, at 62.
Appellant argues that the trial court erred because it failed to conduct an in camera inspection of an ATF videotape that allegedly chronicled drug trafficking activities by Dials. Appellant contends that the court was obligated to view the tape in order to ascertain whether the information on the tape was favorable and material to appellant. We disagree. In this case, the jury was required to determine whether appellant reported "an alleged offense or other incident within [law enforcement] concern, knowing that such offense did not occur." C.C.C. 2317.32(A)(3). At the time he called the police to report that Dials may have had a gun, appellant had no knowledge whatsoever about Dials' prior activities in general or about any of the specific information contained on the videotape at issue. Because appellant did not make a plausible showing that the information contained on the tape was material to the relevant issues in this case, the trial court was not obligated to review the tape. Accordingly, we overrule appellant's fifth assignment of error.
In his sixth assignment of error, appellant contends that the trial court erred when it failed to give five of appellant's proposed jury instructions. A trial court is required to provide the jury with all instructions that are relevant and necessary in order for it to weigh the evidence and discharge its duty as fact finder. State v. Comen (1990),50 Ohio St.3d 206, paragraph two of the syllabus. A trial court, however, "has discretion to determine and use its own language when incorporating legal principles in jury instructions." State v. Barnd (1993), 85 Ohio App.3d 254, 259. An appellate court considers whether the trial court's refusal to give a requested jury instruction constituted an abuse of discretion. State v. Wolons (1989),44 Ohio St.3d 64, 68. An abuse of discretion connotes more than an error of law; it implies that the court's attitude was unreasonable, arbitrary or unconscionable. State v. Adams (1980), 62 Ohio St.2d 151, 157. "The refusal to give requested jury instructions is reversible error only if the instructions are a correct statement of the law, not covered by other instructions and the failure to give the instructions impairs the theory of the case of the party requesting them." State v. Shahan (Mar. 12, 1998), Franklin App. No. 97APC08-1107, unreported.
We conclude that the trial court did not err when it refused to give the proposed instructions. Appellant submitted the following proposed jury instructions:
DEFENDANT'S PROPOSED JURY INSTRUCTION NO. 1
 You have heard limited testimony regarding Columbus Division of Police internal regulations. Charles Joyce is charged with a criminal offense. The Columbus Division of Police internal regulations may have no bearing on your determination of Mr. Joyce's guilt or innocence.
DEFENDANT'S PROPOSED JURY INSTRUCTION NO. 2
 Charles Joyce is a police officer employed with the Columbus Police Department at the time of the offense. Irrespective of his occupation as a police officer, Defendant must be judged under the same standards as any other ordinary citizen. Police officers may not be held to a higher standard of conduct simply because they are employed as such.
DEFENDANT'S PROPOSED JURY INSTRUCTION NO. 3
 You have heard testimony that Joe Dials has filed a civil lawsuit against Charles Joyce and others seeking money damages. This lawsuit bears directly on the subject matter of this case and thus on Joe Dials' credibility. You may consider any motive to fabricate, bias, and/or interest in the outcome caused by this lawsuit in evaluating Mr. Dials' credibility.
DEFENDANT'S PROPOSED JURY INSTRUCTION NO. 4
 There had been evidence in this case that Joe Dials has made prior contradictory statements regarding material aspects of his trial testimony. The testimony of a witness may be discredited by showing that he previously made statements which are different than, or inconsistent with, his trial testimony. It is the province of the jury to determine the credibility, if any, to be given the testimony of a witness who has made prior inconsistent or contradictory statements.
DEFENDANT'S PROPOSED JURY INSTRUCTION NO. 5
 You have heard testimony that no firearm was found on either Mr. Dials' person or in his car. The prosecuting attorney is required to prove beyond a reasonable doubt that Charles Joyce acted knowingly, as that term has been defined. The fact that no firearm was found is not relevant to your determination as to Charles Joyce's mental state and whether he acted knowingly. You should consider only what was known to Mr. Joyce at the time he made the telephone call to the Columbus Police Department.
By his first and second proposed instructions, appellant sought to distance himself from his employment as a law enforcement officer. In his first instruction, appellant cautioned that Columbus police internal regulations had no bearing on appellant's guilt and, in his second instruction, cautioned that, as a police officer, appellant should not be held to a higher standard of conduct. We conclude that these instructions are not entirely accurate and are, in fact, contrary to appellant's theory of the case. Appellant testified that he believed Dials may have had a gun in part because of appellant's training as a police officer. Appellant testified, for example, that he was impressed by the way Dials pulled up his pants because appellant has had to carry a gun in his capacity as a police officer. Appellant also testified that he refused to give his real name to the dispatcher because he was aware that the dispatcher would respond differently to a call from a police officer. We conclude that appellant's training as a police officer and his familiarity with police regulations may have been relevant to whether appellant knowingly called a false alarm. Accordingly, the trial court did not err in refusing to give appellant's first and second proposed instructions.
Appellant's third and fourth proposed instructions pertain to bias and witness credibility, matters upon which the trial court rendered a general instruction. Appellant's fifth proposed instruction pertains to the prosecutor's burden to prove that appellant acted knowingly, also a matter upon which the trial court rendered an instruction. Because the court's own instructions adequately incorporated the relevant legal principles regarding bias, credibility and knowledge, we conclude that the trial court did not abuse its discretion when it declined to give appellant's third, fourth and fifth proposed instructions. Accordingly, we overrule appellant's sixth assignment of error.
For the foregoing reasons, we overrule appellant's first, second, third, fourth, fifth and sixth assignments of error, and the judgment of the Franklin County Municipal Court is affirmed.
Judgment affirmed.
BRYANT, P.J., and PETREE, J., concur.